# THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF COLUMBIA

Angela Hoffman, et al )
)
               Plaintiff, )
)
v. ) Case No. 1:08-cv-01924 (RMU)
)
District of Columbia, et al. )
)
               Defendants. )

### MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO REINSTATE THE UNITED STATES AND TO DENY THE DISTRICT OF COLUMBIA'S MOTION TO DISMISS

NOW COME the plaintiffs, by way of undersigned counsel with a motion to reinstate the United States as a defendant in the captioned action, and in Opposition to the Motion to Dismiss filed by the District of Columbia.

### FACTS

1. Officer Michael Iannacchione, a low level police officer, submitted an affidavit to Judge Harold Greene on July 23, 2008 wherein he alleged that based upon information provided by his confidential informant, there was probable cause that illegal gaming activities were being conducted at 2905 Georgia Ave., NW, Washington, D.C. 20001. See Ex. 1.

2. Based upon the representations by Officer Iannacchione, Judge Greene issued a Search Warrant. Ex. 2. Officer Iannacchione, a member of the District of Columbia Metropolitan Police Department ("DCMPD") Narcotics Special Investigative Division ("NSID") and the infamous "Lewis List"[1] solicited agents of the Drug

---

[1] Police Officers who have had their credibility compromised so many times that the U.S. Attorney refused to use them as witnesses.

Ex. 3

Enforcement Agency (DEA) to serve the Search Warrant on July 31, 2008.[2] Officer Iannacchione represented that he obtained his knowledge of the illegal acts from his confidential informant.[3]

3. Following the raid, Officer Michael Iannacchione filed the Search Warrant "RETURN" with Judge Greene and therein represented that the following evidence was seized:

    a. Documents.

    b. Playing Cards.

    c. Dice.

    d. Marijuana.

    e. Ziploc of Crack Cocaine.

E. 2.

4. As a result of the representations by Officer Iannacchione, Mr. Hoffman's participation in the Section 8 was terminated. Ex. 4. Ms. Hoffman appealed. The following time lines are relevant, material and dispositive:

    a. August 10, 2008 – Written Complaint to hand delivered to DOJ.[4]

    b. August 13, 2008 – emailed complaint to DOJ, Ex. 5, and FBI, Ex. 6.

    c. October 15, 2008 – Letter US Attorney alleging violation.[5]

    d. November 6, 2008 – Civil Complaint filed in U.S. District Court.[6]

    e. U.S. served summons / complaint on December 8, 2008.

---

[2] The DEA was established in 1973 by President Richard M. Nixon as part of the Justice Department Ex. 3.
[3] In the District of Columbia a confidential informant is referred to as a "Special Employee". Ex. 3, page 2. DCMPD policy mandates how special employees are identified, accounted for and controlled.
[4] Clearly makes reference to July 31, 2008 raid on 2905 Georgia Ave., NW.
[5] Clearly makes reference to July 31, 2008 raid and alleged criminal acts at 2905 Georgia Ave., NW.
[6] Filed in response to letter from U.S. Attorney dated October 15, 2008.

    f.    January 15, 2009 – US filed motion to extend time to answer.

    g.    February 10, 2008 – SIX MONTHS from date of complaint to DOJ.

    h.    February 25, 2009 – United States filed motion to dismiss.[7]

5.    On March 16, 2009 the District of Columbia Housing Authority gave NOTICE that Ms. Hoffman's complaint would be heard on April 3, 2009. Ex. 7.

5.    The hearing was held on April 3, 2009 and continued to May 1, 2009. The Honorable Tonya Butler-Truesdale presided and entered an order wherein she concluded that: (1) Officer Iannacchione lacked credibility; (2) there was no legal basis for the police raid at 2905 Georgia Ave., NW, Washington, DC 20001 on July 31, 2008; (3) that evidence purportedly seized in fact does not exist[8]; (4) that the confidential informant Officer Iannacchione represented to Judge Greene confirmed the illegal activity was not produced; (5) that no arrests were made on any of the parties present at the time of the raid.[9] Ex. 10. DEA admitted to the local news media of its participation in the raid on the residence. Ex. 11.

## ARGUMENT

A Rule 12(b)(6) motion to dismiss test the legal sufficiency of a complaint. <u>Browing v. Clinton</u>, F.3d 235, 242 (D.C. Cir. 2002). The complaint need only set forth a short and plain statement of the claim, giving the defendant fair notice of the claim and

---

[7] Defendant's Motion to Dismiss was filed Six (5) months and fifteen (15) days after written Notice of federal tort claim was filed. Also relevant to this fact is that the plaintiffs have two (2) years in which to file a claim against DEA and its agents.

[8] DCMPD General Order 601.03 required Officer Iannacchione to produce PD Form 81 (property record) and PD Form 163 (prosecution report). Ex. 8. Officer Iannacchione did not produce the required reports and had no chain of custody for the evidence purportedly seized nor would he provide any information as to the location of the alleged evidence. Nor could he produce information on his confidential informant despite DCMPD policy that he maintains records of contracts and transactious. See Ex. 9. PD Form 854.

[9] Officer Iannacchione represented that his superiors approved the raid on the property, but failed to return to continue his testimony and therein identify who specifically within the DCMPD chain of command had approved the police action. However, according to police policy such an operation would be approved by the Chief of Police.

3

the grounds upon which it rests. Kingman Park Civic Ass'n v. Williams, 348 F.3d 1033, 1040 (D.C. Cir. 2003)(citing Fed.R.Civ.P. 8(a)(2) and Conley v. Gibson, 355 U.S. 41, 47 (1957).

"Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trail procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." Conley, 355 U.S. at 47-48 (internal quotation marks omitted).

The United States has not DENIED that its agents participated in the raid on Hoffman's home on July 31, 2008. In fact DEA admitted to local news media that its agents participated in the raid, albeit in support of the District of Columbia Metropolitan Police Narcotics Special Investigative Department (NSID). DEA sua sponte proffered that Captain Melvin Gresham was not the target of the raid. Ex. 11. However, DEA has refused to identify the names and addresses of its agents that participated in the raid, thereby DENYING the plaintiffs material information necessary for its case in chief.[10]

The substitution provision of the Federal Employees Liability Reform and Tort Compensation Act (FELRTCA) provides that "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment as the time of the incident out of which the claim arose . . . the United States shall be substituted as the party defendant." Title 28 U.S.C. § 2679(d)(1).[11] The

---

[10] Individual DEA agents could liable in a Bivens action if plaintiffs were permitted discovery.
[11] See Westfall Act. 28 U.S.C. § 2679. In the report to Congress in H.R. 4612, the bill that was to become the Westfall Act, U.S. Representative Frank indicated that the law of the State in which the conduct occurred would normally govern the scope of employment issue for purposes of substitution. See H.R. Rep. NO. 100-700 at 5 (citing Williams v. U.S., 350 U.S. 857 (1955)). Representative Frank expressly noted certain limitations on the scope of employment, stating that outrageous or seriously criminal actions would of course be excluded. As stated in the report, "[i]f an employee is accused of egregious misconduct, rather than mere negligence or poor judgment, then the United States may not be substituted . . . and the individual employee remains liable." See H.R. Rep. No. 100-700, at 5.

4

plaintiffs were DENIED the opportunity to identify via discovery the individual DEA agents that committed the offenses against the plaintiffs.

The purpose of the Westfall Act was to "remove the potential personal liability of Federal employees for common law torts committed within the scope of their employment, and . . . instead provide that the exclusive remedy for such torts is through an action against the United States under the FTCA." See House of Representatives Report (H.R. Rep.) No. 700, 100th Congress, Second Session 4 (1988). In the instant action, the United States DID NOT MAKE the certification required at FELRTCA yet seeks to defend the undisputed actions of its agents (DEA) by asserting lack of proper NOTICE. The facts don't support that conclusive.

Failure to certify while seeking dismissal on behalf of agents that may or may not have been acting within the scope of their office denied the plaintiff substantive due process, by shielding the individual officers from the plaintiff's right to petition their government for redress. As stated, Fed.R.Civ.P. 8 et seq., provides for liberal allegations in anticipation of discovery, which is used to refine and distill the facts.

The individual DEA agents were not known to the plaintiffs but could have been identified via discovery. Given the liberal pleading requirement of the Federal Rules, dismissal prior to discovery forecloses the opportunity for the plaintiffs to be made whole and DENIED the plaintiffs substantive due process and equal protection under the law.

The plaintiff seeks reinstatement if not but for the sole purpose of identifying the DEA agents who participated in the raid. The court acknowledged this very problem at footnote 4 of its Memorandum Order, which reads in part:

> Although the plaintiff may bring a § 1983 claim against a federal employee who acts under the color of state law, see Williams v. United States, 396

5

F.3d 412, 413-15 (D.C. 2005), the plaintiffs have not named any individual federal employees as defendants in this action, having instead asserted their claims against the United States only, see generally Compl. Thus, the rule articulated in Williams fails to salvage the plaintiffs' § 1983 claim against the United States.

The raid conducted against the plaintiffs on July 31, 2008 by DEA agents, detailed to support DCMPD, was a "STATE ACTION" subject to § 1983 claims. The liability of DEA agents is subject to the "law the place" where that act was committed because "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). "Indeed, we have consistently held that § 1346 (b)s reference to the "law of the place" means law of the State – the source of substantive liability under the FTCA." Richard v. United States, 369 U.S. 1, 6-7, 11 (1962).

Dismissal under Fed.R.Civ.P. 12(b)(6) prior to affording the plaintiffs an opportunity to engage in discovery, and to identify individual DEA agents, who admittedly participated in the assault, battery, and detention of twenty-four (24) Citizens of the District of Columbia was an abuse of discretion and in effect shielded the admitted perpetrators against civil action authorized under law.

### The Plaintiffs' Civil Action conformed to the FTCA

The Rule that controls the action before bar is Title 28 U.S.C. § 2675, which reads in pertinent part:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury . . . caused by the negligent or wrongful act . . . of any employee . . . while acting within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal Agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

6

See 28 U.S.C. § 2675 (a). It is undisputed that Notice was given by the plaintiffs and received by the defendant. It is also undisputed that the claim was not "finally denied" within the six (6) months required by law.

It is an undisputed fact that the United States did not make "final disposition" of the plaintiff's claim within six months of the plaintiff's filing their claim. However, the Statute does not read that the time for final disposition by the agency ceases to run at the time a civil action has been filed. It establishes a two year period in which to bring an action.

The second sentence of the law is relevant and controlling of the issue in dispute:

> The failure of an agency to make final disposition of a claim within six months after it is filed shall at the option of the claimant *any time thereafter, be deemed a final denial of the claim for purpose of this action.*

See 28 U.S.C. § 2675 (a). (Two years = July 31, 2008 to July 31, 2010).

The court acknowledged at its memorandum opinion that the plaintiffs complained to the United States Justice Department on August 10, 2008. The law provides that "[t]he failure of an agency to make final disposition of a claim within six months . . . shall . . . *any time thereafter shall be deemed a final denial of the claim for purpose of this action.* See 28 U.S.C. § 2675(a).

The six months ran from August 10, 2008 to February 10, 2009. The United States did not file its motion to dismiss until February 25, 2009. At the time the United States filed its motion to dismiss, the time (6 months) had run and the claim "shall be deemed" DENIED.

7

### The October 15, 2008 Letter from U.S. Attorney
### was final denial by agency

The court at its Memorandum Opinion stated "[t]he plaintiffs' do not allege that they ever received a formal written rejection from the DEA, see generally id.: Pls., Opp'n . . . the plaintiffs contend that the "Notice of Unlawful Activity" received from the U.S. Attorney for the District of Columbia constituted a final denial of their claims, the notice does not even mention the plaintiff's tort claims. See Pls. Opp'n, Ex. 12." However, the fact that the tort claims were not mentioned in the response is not dispositive. Clearly the Department of Justice knew of and authorized the letter from the Office of the U.S. Attorney, wherein the U.S. Attorney threatening to pursue charges derivative of the very facts mentioned at the claim filed by the plaintiffs against the defendant. This fact alone supports the reasonable conclusion that the letter from the U.S. Attorney was in response to and a rejection of the plaintiffs' allegations against DEA at the claim.

### Response to Supplemental Authority

At page 1 and 2 of the District of Columbia filing it confirms that allegations that Captain Gresham was and continues to be a target for senior managers in the District of Columbia Metropolitan Police Department where they refer to a myriad of acts committed under color of state law against him and those unlucky enough to be around him or doing business with him.[12]

Citing Judge Robertson's rulings lends nothing to the dispute before bar. At Ex. 12 attached hereto, is the Notice of Appeal filed in that case. Relevant to the argument

---

[12] The defendants represent that the plaintiff did not file an opposition to its motion to dismiss. Records in the officer of undersigned indicate that the opposition was filed. Checking the docket substantiates that the filing was not listed. Undersigned clearly meant to oppose the motion to dismiss and will move to file an opposition Nunc Pro Tunc.

8

put forth by the defendant is the fact that, although the District of Columbia was clearly default, and default was entered, Judge Robertson refused to enter Judgment. Despite proper service, Judge Robertson dismissed the first case, only to accept the same process of service procedure as valid in the second case. Judge Robertson flatly refused to permit Captain Gresham to sue those individuals that had harmed him, denying him substantive due process, and equal protection under the law. Judge Robertson then dismissed the second complaint and undersigned will argue that such dismissal is inapposite to the law in this jurisdiction and the preponderance of other federal Circuits.

*It should not escape this court that unable to argue the facts or the law in this case,* opposing counsel seek to influence the court by pointing to other the controversy that was before Judge Robertson. Unfortunately for the defendant the case referenced better serves as evidence of opposing counsel's ability to influence, albeit improperly, rather than an exercise of equal access to justice. The allegations against the District of Columbia and DEA cannot be DENIED and have not been DENIED. The defendants herein can do no more than ask the court to IGNORE the Facts, and to IGNORE the Law because if the court does not do so, the plaintiffs prevail.

## CONCLUSION

The plaintiffs argue herein that they filed their claim on August 10, 2008 and that on February 10, 2009 the running of the six (6) months, required that the court conclude that the claim was DENIED. The defendant had from the time of service in November 2008 to February 10, 2009 to file a motion to dismiss citing failure to exhaust administrative remedies. However, effective February 10, 2009 the administrative

9

condition precedent was satisfied, DEA having to failed to respond in six (6) months and a motion to dismiss, after that date under Title 28 U.S.C. § 2675 (a), MUST BE DENIED.

Title 28 U.S.C. § 2675(a), was satisfied, the United States is a proper party defendant and the plaintiffs seek an order reinstating the claims against the United States to the active docket. .

Respectfully Submitted,

/s/
E. Scott Frison, Jr., Esq.
Bar No. 478092
1629 K St., NW, Ste. 300
Washington, DC 20036

Certificate of Service

I HEREBY Certify that this Memorandum was filed electronically on October 5, 2009.

/s/
E. Scott Frison, Jr., Esq.

10